UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMITRY VLASOV,<br><br>                           Petitioner,<br><br>v.<br><br>PAM BONDI, Attorney General of the United States, *et al*.,<br><br>                          Respondents. | Case No.: 25-cv-1342-AJB-MSB<br><br>**ORDER:**<br><br>**(1) GRANTING PETITION FOR HABEAS CORPUS (Doc. No. 1);**<br><br>**(2) DENYING AS MOOT PETITIONER'S REQUEST FOR TEMPORARY RESTRAINING ORDER (Doc No. 5); and**<br><br>**(3) DENYING AS MOOT REQUEST FOR IMMEDIATE RELEASE (Doc. No. 7).** |

Petitioner Dmitry Vlasov ("Petitioner"), appearing *pro se*, is a detainee in the custody of the United States Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE"), at the San Luis Regional Detention Center in Arizona. (Doc. No. 1.) On May 23, 2025, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 (the "Petition"), seeking relief due to prolonged

detention in immigration custody pending removal. (*Id.*) Petitioner seeks a writ directing his immediate release from ICE custody. (*Id.*) Respondents opposed the Petition. (Doc. No. 7.) Petitioner did not file a reply. Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument.

I.  **BACKGROUND**

Petitioner is a native and citizen of Russia. (Doc. No. 1.) Petitioner alleges that ICE is impermissibly detaining him beyond the legally allowed timeframe. (*Id.*) Petitioner contends that his continued detention is unconstitutional pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. No. 1 at 2.)

On August 13, 2024, Petitioner, his wife, and son were passengers in a car that was stopped at the San Ysidro Port of Entry. (Doc. No. 7-1.) Due to housing limitations, Petitioner's wife and son were placed in removal proceedings and released from custody. (*Id.* at 3.) A query of the California Border Patrol database indicated that Petitioner had no prior immigration apprehensions and no prior criminal records. (*Id.* at 3–4.) On August 19, 2024, Petitioner was taken into ICE custody. (Doc. No. 1.) Petitioner was afforded a credible fear interview by a U.S. Citizenship and Immigration Services asylum officer. (Doc. No. 7-1 at 4–5.) On August 29, 2024, based on a positive determination by the U.S. Citizenship and Immigration Services asylum officer, Petitioner was placed in removal proceedings where he presented his credible fear claim in hearings before an Immigration Judge on September 9, October 10, October 21, November 22, and November 26, 2024. (*Id.* at 7–11.) The Immigration Judge denied Petitioner's asylum claim and ordered him removed from the United States. (Doc. 7-1 at 13.) However, the Immigration Judge also found that Petitioner would likely be harmed and would face political persecution on account of his political opinions if he were to return to Russia. (*Id.* at 13, 15.) Accordingly, the Immigration Judge withheld Petitioner's removal to Russia. (*Id.* at 16.) Petitioner asserts that although DHS appealed the Immigration Judge's decision, DHS withdrew its

appeal on January 14, 2025, making the Immigration Judge's decision final as of that date.[1] (*Id.*)

On July 7, 2025, ICE informed Respondents that it had exhausted efforts to remove Petitioner from the United States to countries other than Russia. (Doc. No. 7 at 3.) On July 9, 2025, local ICE counsel informed Respondents that ICE intended to release Petitioner from custody and expected the review and approval process "to be completed within about ten days." (*Id.*) On July 23, 2025, Respondents filed a status report indicating that Petitioner's approval and release has not taken place within the 10 days previously prescribed and stated that it asked the local Joint Terrorism Task Force for confirmation of vetting for Petitioner's release. (Doc. No. 11.) Respondents indicated that they would receive updated information within a week. (*Id.*) On August 1, 2025, Respondents filed a second status report stating that "ICE Headquarters advised that they continue to actively pursue third country resettlement of Petitioner" and Respondents would "notify the Court when Petitioner has been released and, if he has not been released by September 2, 2025, will provide the Court with a status report." (Doc. No. 13.)

## II.     LEGAL STANDARD

To succeed on a habeas petition, a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973)). However, the petition must "allege the facts concerning the applicant's commitment or detention," 28 U.S.C. § 2242, and the petitioner must make specific factual allegations that would entitle him to habeas corpus relief if they are true. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.1990)

---

[1] Respondents provide that the removal order became final and executable on December 27, 2024. (Doc. No. 7 at 2.)

   The Immigration and Nationality Act ("INA") permits detention of noncitizens present in the United States during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Under 8 U.S.C. § 1231, a noncitizen who is ordered removed shall be removed by DHS within 90 days. 8 U.S.C. § 1231(a)(1)(A). During the removal period, the noncitizen must be detained. 8 U.S.C. § 1231(a)(1)(A). Section 1231 governs detention during this 90-day removal period, which begins on the latest of either "(1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." *Avilez v. Garland*, 69 F.4th 525, 531 (9th Cir. 2023) (citing 8 U.S.C. § 1231(a)(1)(B)(i)–(iii)). If the Government fails to remove the noncitizen during those 90 days, the statute only authorizes further detention if the noncitizen is: (1) "inadmissible" under certain grounds, (2) "removable" as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) has been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 682, (2001).

   In *Zadvydas v. Davis*, the Supreme Court addressed whether there was a limit to the time a noncitizen can be detained after the initial 90-day removal period expires. 533 U.S. at 682. The Court held that the statute limits a noncitizen's "post-removal-period detention to a period reasonably necessary to bring about [their] removal from the United States." *Id.* at 689. "[T]he statute 'does not permit indefinite detention.'" *Xi v. U.S. Immigration & Naturalization Serv.*, 298 F.3d 832, 836 (9th Cir. 2002) (quoting *Zadvydas*, 533 U.S. at 689). A noncitizen may only be held in confinement until "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. A six-month period of detention is presumptively reasonable. *Id.*

///

|   |   |
|---|---|
| 1 | When detention exceeds this presumptively reasonable period, the noncitizen's "continued detention is permissible if his removal is reasonably foreseeable." *Xi*, 298 F.3d at 839 (citing *Zadvydas*, 533 U.S. at 699–701). "An alien is entitled to habeas relief after a presumptively reasonable six-month period of detention under § 1231(a)(6) only upon demonstration that the detention is 'indefinite'—i.e., that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Diouf v. Mukasey*, 542 F.2d 1222, 1233 (9th Cir. 2008) (quoting *Zadvydas*, 533 U.S. at 701). The noncitizen has the initial burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If the noncitizen satisfies the initial burden, then the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the non-citizen must be released from detention. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018). |

## III. DISCUSSION

Respondents argue that Petitioner's habeas petition is subject to dismissal because it was filed prematurely (on May 23, 2025), and the presumptively reasonable removal period (until June 26, 2025) had not yet elapsed. (Doc. No. 6 at 4.) The Court finds this argument unavailing. Although the presumptive period had not lapsed when the Petitioner filed his petition for habeas relief, over two months have now passed, and he remains in confinement. *See Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period."). Petitioner has now been detained for more than seven months. Accordingly, Petitioner has been held in confinement beyond the presumptively reasonable period and is entitled to habeas relief if he can demonstrate that the detention is "indefinite" such that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

     Based on Respondents' representations, Petitioner has established that he is not likely to be removed in the reasonably foreseeable future. In responding the Petition, Respondents provide that "ICE has exhausted its efforts to remove Petitioner to a country other than Russia." (Doc No. 4.) Respondents also state that Petitioner "does not face imminent removal," and "ICE is preparing to release him from custody, having exhausted efforts to remove him to countries other than Russia." (*Id.* at 5, 6). Respondents argue that Petitioner's anticipated release from custody will render this case moot. (*Id.* at 4.) However, it appears that Respondents' have changed course and no longer anticipate releasing Petitioner. According to Respondents' August 1, 2025 status report, ICE is once again actively pursuing third country resettlement of Petitioner, but it appears that they intend to keep Petitioner in custody. (Doc. No. 13 (If Petitioner "has not been released by September 2, 2025, [Respondents'] will provide the Court with a status report.")). The Court also notes that Petitioner does not present with any criminal history, does not appear to be a risk to the community, and Respondents do not provide any evidence to suggest that Petitioner is unlikely to comply with the order of removal. *See* 28 U.S.C. § 1231(a)(6). Because Respondents specifically state that Petitioner does not face imminent removal and they have exhausted efforts to remove Petitioner to a country other than Russia, it is apparent that Petitioner's removal is not foreseeable. Moreover, Respondents offer no factual basis to support Petitioner's continued detention. Accordingly, Petitioner's "continued detention [is] unreasonable and no longer authorized by statute." 533 U.S. at 699–700.

## IV.   CONCLUSION

     Petitioner's continued detention is unreasonable and unauthorized. Petitioner is thus entitled to be released from custody. The Court therefore **GRANTS** the Petition for habeas relief. (Doc. No. 1.) Accordingly, the Court issues a writ of habeas corpus requiring

Petitioner's immediate release from custody subject to "appropriate conditions" of supervision to be determined by immigration authorities. See 8 C.F.R. § 241.13(h).[2]

**IT IS SO ORDERED.**

Dated: August 7, 2025

Hon. Anthony J. Battaglia
United States District Judge

---

[2] Petitioner's Motion for Temporary Restraining Order (Doc. No. 5) and Request for Immediate Release (Doc. No. 12) are **DENIED AS MOOT**.